EDWARD T. SAADI, ESQ. (Bar No. 186360)
EDWARD T. SAADI, LLC
970 Windham Ct., Ste. 7
Boardman, OH  44512
Phone:  (330) 782-1954
Fax:     (330) 266-7489 (fax)
Email:  edward@saadilaw.com
Attorney for Plaintiff Intuitive Imaging Informatics, LLC

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **INTUITIVE IMAGING INFORMATICS, LLC**, a Nevada limited liability company, | CASE NO. 2:23-cv-10593-DSF-RAO |
| | Hon. DALE S. FISCHER |
| Plaintiff/Counter-Defendant, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE ITS FIRST AMENDED COMPLAINT** |
| v. | |
| **INTUITIVE SURGICAL OPERATIONS, INC.**, a Delaware corporation, **INTUITIVE SURGICAL, INC.**, a Delaware corporation, **INTUITIVE SURGICAL HOLDINGS, LLC**, a Delaware limited liability company, **INTUITIVE FLUORESCENCE IMAGING, LLC**, a Delaware limited liability company, **INTUITIVE SURGICAL SERVICE OPTICS, INC.**, a Massachusetts corporation, and **DOES 1-10**, inclusive, | Hearing Date:  August 26, 2024<br>Hearing Time:  1:30 p.m.<br>Courtroom:  7D<br>Filing Date:  December 18, 2023<br>Trial Date:  December 9, 2025 |
| Defendants/Counter-Claimants. | |

NOW COMES the Plaintiff, Intuitive Imaging Informatics, LLC, by and through counsel, and hereby replies in support of its **Motion for Leave to File Its First Amended Complaint** [D.E. #68].

1

I.  **FACTUAL BACKGROUND.**

The Defendants' attempt to make Plaintiff out as the "bad guy" in this matter is disgraceful. Plaintiff is not the global behemoth seeking to take something that doesn't belong to it from a much smaller business—that is the Defendants. Plaintiff did not brazenly expand its use of a trademark to new goods and services with full knowledge that it is owned and registered by another—that too is the Defendants. Plaintiff did not hire a private investigator to pretend to be a potential customer of a trademark owner, covertly seeking evidence of imagined abandonment—that, too, is the Defendants. And finally, Plaintiff is not the one seeking to evade liability for such actions by playing a corporate shell game. *See* D.E. #71, pp. 8-12 of 28. That's the Defendants too.

The U.S. Trademark Office impeded Defendants' bulldozing of Plaintiff's rights by pointing out that their trademarks are likely to be confused with Plaintiff's. Rather than face this reality, Defendants filed a frivolous abandonment proceeding at the TTAB. Even after Plaintiff produced hundreds of documents proving continued use, and testified openly about past and intended future use, the Defendants still (dissonantly) cling to the abandonment defense. *See* D.E. #66-1, pp. 2-278.

The Defendants' complaints about the events leading up to the filing of the instant motion are pure make-believe. Yes, Plaintiff requested a continuance of the

MJOP hearing date for a long-planned family vacation. When the hearing date moved, so did the briefing deadlines. That is by local rule, not by some trickery. *See* L.R. 7-11. At no time did Defendants request that the deadlines remain static, and the stipulation they signed was crystal clear. D.E. #63.

Moreover, there is nothing at all deficient in Plaintiff's pre-filing meet and confer. On July 19th—fully **ten days** prior to seeking leave to amend—Plaintiff informed defense counsel that it intended to seek leave to "*file an amended complaint adding a claim for relief for reverse confusion, and also adding Orpheus Medical as a defendant.*" D.E. #71-2, p. 7 of 7. And that is precisely what Plaintiff did. Nothing in the local rules requires Plaintiff to provide a proposed amended complaint, but Plaintiff nevertheless did so as soon as it was complete; then, Plaintiff satisfied counsel's ensuing requests to supply it in various additional forms. Fully cognizant that July 29th was Plaintiff's deadline to file the motion [D.E. #60] (and hoping that the Plaintiff would miss it) Defendants did not consent to the amendment. And, Plaintiff indulged counsel's request for a *second* meet-and-confer by Zoom, post-filing, which of course resulted in no change.

And, there is no chicanery in Plaintiff's effort to streamline the issues before the Court by suggesting a stipulation to file the amended complaint and a re-filing of the MJOP as to the amended complaint. To the contrary, this is precisely what litigants are supposed to do—assist the Court in streamlining its docket.

II. **ARGUMENT.**

    a. The Proposed Amendments Are Not Futile.

Prior to filing this motion, Plaintiff informed Defendants that it believes the MJOP lacks merit, and that the proposed amendment is not an effort to rectify the perceived deficiencies in the original Complaint. Plaintiff also shared its view that the Amended Complaint nevertheless moots the MJOP because the MJOP is directed to the original Complaint, which will no longer be operative should leave be granted. The Court has issued no ruing that there is anything wrong with the Complaint; but if the Court does ultimately does find merit in the MJOP, the mere seeking of leave to amend (to add parties and a cause of action) is no basis to conclude that whatever deficiencies exists are incurable. As such, Plaintiff's futility argument must fail.

There is no basis for the Defendants' claim that Plaintiff knew, or should have known, about Orpheus Medical prior to filing the Complaint. As explained in Plaintiff's opposition to the MJOP [D.E. #71, pp. 8-12 of 28], Plaintiff has been left to its own devices to determine which of the Intuitive Surgical entities is engaging in infringing activity. The Defendants are the sole party in possession of such facts, and they refused to answer Plaintiff's on-point discovery requests. Instead, they hide smugly behind a corporate shell game in which the relationships between their "dozens" of corporate entities are "not publicly known." D.E. #48,

p. 7. This is precisely why Plaintiff named "DOES 1-10" as defendants in the original Complaint; so that these Does can be identified when they are known.

Contrary to Defendants' claim, Plaintiff certainly did explain during the parties' second meet-and-confer that it is now aware of specific facts regarding Orpheus's involvement in the infringements. Defense counsel was informed that Orpheus is now referred to as "ORPHEUS – AN INTUITIVE COMPANY" and that it is offering goods and services intolerably close to Plaintiff's goods. Counsel was likewise apprised of the contents of the Orpheus website. *See* D.E. #71-6.

The Defendants point to nothing—no document, no fact, nothing—to support their averment that the Plaintiff knew or should have known about Orpheus Medical's involvement in the infringing activities for so long that laches should bar Plaintiff's claims against them. The Orpheus Medical entities do not have the term "intuitive" in their corporate names, nor anything that makes reference to imaging. Their acquisition by Intuitive Surgical, in and of itself, sheds no light whatsoever on the question of what trademarks Orpheus Medical uses, or would use, to offer its goods and services.

**b. The Addition of a Reverse Confusion Claim Is a Significant and Necessary Change.**

The addition of a specific claim for "reverse confusion" is significant and necessary. The Ninth Circuit has held that "reverse confusion...is a theory of likely confusion that may be alleged by itself or in addition to forward confusion."

5

*Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017).  Whether it is pleaded separately or not, reverse confusion may be relied upon only when it is "compatible with the theory of infringement alleged in the complaint." *Id*.  In other words, even though a claim for reverse confusion need not be separately pleaded, "the allegations will vary in individual cases" and the overall allegations of a complaint must to be compatible with a reverse confusion theory. *Id*.  It does not just magically arise in every complaint for trademark infringement.

Here, the proposed Amended Complaint adds allegations that eliminate any doubt that reliance on a reverse confusion theory is appropriate under the facts of this case.  *See* D.E. 68-1 ¶¶45-47.  Plaintiff has therefore exercised its option to plead reverse confusion expressly, and separately.  Defense counsel has stated that it "has always understood [Plaintiff's] Lanham Act claim to include reverse confusion"; therefore they will suffer no prejudice by adding the claim specifically. *See Saadi Decl.*, Exh. A.

III. **CONCLUSION.**

For the foregoing reasons, **Plaintiff's Motion for Leave to File Its First Amended Complaint** [D.E. #68] should be granted.

DATED:  August 11, 2024.            **EDWARD T. SAADI, LLC**

By: /s/ Edward T. Saadi            .
Edward T. Saadi, Esq.
*Attorney for Plaintiff Intuitive Imaging Informatics, LLC*